THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SANTOS RODRÍGUEZ ESMURRIA, Defendant and Appellant.

No. CR-64-6.     Decided June 3, 1964.

*Zulma Zayas Puig,* attorney designated by the Supreme Court to give legal aid to defendant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: The district attorney filed an information against Santos Rodríguez Esmurria for the offense of burglary in the first degree, consisting in that the said defendant "sometime in the evening of May 10–11, 1963, and in Juana Díaz, Puerto Rico . . . illegally, wilfully and maliciously entered at nighttime the office of Higinio Bermúdez Meléndez with the criminal intent of committing larceny or petty theft."

A jury found him guilty of that offense and he was sentenced to serve from 2 to 6 years' imprisonment in the penitentiary, at hard labor. Feeling aggrieved, he appealed and assigned the commission of four errors. The summary of the evidence and of the incidents object of the assignment of errors is correctly stated by the Solicitor General as follows:

"The first prosecution witness was Higinio Bermúdez Meléndez, owner of the office which defendant entered at nighttime. He testified that some time on May 10–11, 1963, at nighttime, as the result of a call made to him by Guillermo Santiago, he called the police and went to his office where he found the file 'lying flat on two pieces of pipe'; that when he opened it he noticed that nothing was missing; that he saw the defendant only the night of his arrest; that he spoke with him and he said to him the following:

'What did you talk about?

'Well, he asked me to forgive him for what he had done, that he had never taken my money, and I said "I forgive you, now it's up to justice." ' (Tr. Ev. 8.)

"The second prosecution witness, Guillermo Santiago Bermúdez, the first witness' brother, testified that he lived in a room next to the office which was situated in turn next to the house where Higinio Bermúdez lives. That in the evening of May 10th going on the 11th he woke up when he heard the noise of the file as it fell; that he switched on the light and went out, but did not see anyone. He put the file back in its place and closed the door with a latch; that some time later  he heard someone again opening the door of the office; that he switched the light on again; that he went out '. . . and when I got there and said what is that, I saw someone hiding behind the door, and he then said to me: "If you scream I'll kill you," and I looked and opened the front door and screamed that there was a burglar inside' (Tr. Ev. 11–13). He testified that he did not see the person who was hiding there and even so he spoke to him (Tr. Ev. 11–13). See, also, Tr. Ev. 16–18 and 20–21.

"The third witness was Radamés Cintrón Algarín, paymaster for Higinio Bermúdez Meléndez. He testified that on May 10 the defendant, who used to work for Bermúdez Meléndez, went

to the office to collect. He paid him and put back in the file the sum of $1,131.07 which remained after paying the defendant. The witness testified:

'DISTRICT ATTORNEY COLÓN:

Who was there when you put the money back in the file?

WITNESS:

No one else.

You and who else were there?

And the one who came to collect.

No one else you say?

No one else' (Tr. Ev. 22–25).

"The fourth witness was Luis Guillermo Rosario, accomplice in the crime. He testified that he knows the defendant; that the night of the occurrence the defendant invited him and another one named Jorge Luis Rivera to go to the movies, but that afterwards they decided not to go and spent the money on a sandwich; that afterwards 'he invited us to go to the office to pick up some money.' We copy below from the witness' testimony:

'DISTRICT ATTORNEY COLÓN:

Whom did he invite?

Me and Jorge Luis Rivera.

As a result of that invitation which Santos Rodríguez Esmurria made to you, what did you do?

We left.

Where to?

To the office of Don Higinio.

Whose office?

Don Higinio Bermúdez'.

And what happened?

Then Santos entered the office.

Who entered the office?

He and Jorge Luis.

Then what did you do?

I remained outside.' (Tr. Ev. 30.)

"He then went on to describe how the office was opened, and because Guillermo Santiago Bermúdez had heard the noise and got up, the defendant and Jorge Luis Rivera went out, but that afterwards they entered again; and that when Guillermo Santiago Bermúdez heard the noise again, he got up the second time, and then the defendant called Don Higinio and told him that if

he screamed he would killed him (Tr. Ev. 28–32). He also testified that the defendant invited them to go to the office burglarized telling them that there was money there (Tr. Ev. 32–33). In another part of his testimony he made the statement which we copy below:

'MR. LLORENS:
And you did not know why they had entered there?
WITNESS:
Why they had entered there?
Yes.
Yes, sir.
And yet, what did you do?
I waited for them.
What for?
After they took the money, to go back.
To go back where?
To sleep.
You were not going to take anything there?
Split it.
So, your job was to watch?
Yes, sir.' (Tr. Ev. 37.)

"The last prosecution witness was the detective who investigated the occurrence, Carlos R. Ortiz. He testified that as a result of the complaint filed by Higinio Bermúdez, he went to the house of defendant, who denied the facts, then went to the residence of Rosario and then to that of Rivera, who admitted the facts, as a result of which he questioned defendant again, who also admitted the facts after hearing the accomplices testify. That he then took him to headquarters where defendant asked to talk with Higinio Bermúdez; that they talked, but that he did not hear what they talked about. (Tr. Ev. 41–44.) This witness said this:

'Esmurria admitted to me that that night he had left with the two boys for the movies, but they decided not to go to the movies and spent the money they had in sandwiches and refreshments, and he invited both of them to go to the house of Bermúdez, to his office, where there was some money to pay the laborers, and Rosario stayed outside; and that he and Rivera opened the rear door and took some pipes about two feet long where they placed a file and tried to take it out,

and then a man who was there woke up and when he heard him he hid and saw Guillermo who was up.' (Tr. Ev. 45.) "He also testified that the defendant admitted the facts in the presence of lieutenant Mercedes Rivera, but that he is not sure whether or not he admitted them before the district attorney; nor was it clear to him whether or not the district attorney had taken a written statement. (Tr. Ev. 48–50.)

"In view of these statements, the defense moved to summon the district attorney and the district attorney moved in turn to summon lieutenant Mercedes Rivera. The court so provided. After a recess the defense informed the court that it was difficult to procure the appearance of the district attorney on the day of the trial, and that since his testimony was 'very essential and very necessary . . . we are going to move for a continuance until he is willing to come to court.' (Tr. Ev. 52–53.) The judge denied the motion. The defense took exception and when asked by the judge he said that he did not have any question of law to raise (Tr. Ev. 52–53).

"The defendant, the only defense witness, as stated at the outset of this analysis of the evidence, testified that he does not know witness Luis Guillermo Rosario; that he had never seen him before that night (Tr. Ev. 56, 60 and 63). This testimony is in open conflict with the testimony of witness Luis Guillermo Rosario. See Tr. Ev. 28 and 62. The witness asserted that the night of the occurrence he went to the movies.

'I ran into Guillermo and two others whom I had not seen before, and they asked me if the picture was over and I told them that it was. First one of them asked me if I had cigarettes and I said that I did not smoke, and I went home to sleep' (Tr. Ev. 57).

"He testified further that he never admitted to the police that he had committed the facts and that he never made any statement before the district attorney, and that what Bermúdez said in his conversation with him was the following:

'What did you tell him?

I spoke with him and I said, Don Higinio, you know very well that I worked for you a long time and that they cannot blame me for that because in fact I am innocent. I wonder if you can help me.

You asked Don Higinio to help you, why?

Because I had not committed that offense.

Is that what you said to the owner of the business?

Yes, sir' (Tr. Ev. 58).

"Compare this testimony with that already cited of Higinio Bermúdez that defendant had begged his forgiveness (Tr. Ev. 8). On cross-examination the defendant said that when he arrived at his home the night of the occurrence, his grandmother and an uncle were there, but that he did not speak to them (Tr. Ev. 66). He then said that although he did not speak to them, he saw them because 'when I arrive home my grandmother is the one who gets up to open the door for me' (Tr. Ev. 66). On cross-examination he also said that he never informed the detective that his grandmother got up to open the door for him, and that he did not bring her to court because it did not occur to him (Tr. Ev. 67 and 68). The defense then asked him what follows:

'Did this attorney ask you to bring your grandmother here?

WITNESS:

No, sir' (Tr. Ev. 68–69).

"Upon questioning by the district attorney he testified that he had not mentioned his grandmother to his attorney because he did not ask him anything about it. In view of defendant's testimony, the attorney moved the court to summon the grandmother, which was denied (Tr. Ev. 69). At this moment the judge pronounced the words which we copy below:

'Ladies and gentlemen of the jury, you should bear this in mind: The request to summon defendant's grandmother was made in your presence. The court has denied the same in the belief that the request made to the court is quite belated, and you should not take into consideration at the time of deliberating the innocence or guilt of defendant, the decision of the court on what the grandmother could have said about his arrival' (Tr. Ev. 70).

"This is therefore a case in which the prosecution evidence is very strong and that of the defense, of alibi, very weak and it was not believed by the jury." (Memorandum of the Solicitor General, pp. 2–8.)

■ The first error assigned is the refusal of the trial court to continue the hearing of the case until district attorney Álvarez Quintana was able to appear.

What apparently was sought to be proved with the testimony of district attorney Álvarez Quintana was that defendant had not admitted the facts before that officer, as testified by detective Ortiz. Yet, Ortiz himself testified that he was not sure that defendant had admitted the facts before district attorney Álvarez Quintana.[1]

It is a fact that according to the prosecution evidence the defendant admitted verbally the commission of the offense before police officers and Higinio Bermúdez Meléndez, and we fail to see how he would benefit by the testimony of district attorney Álvarez Quintana that defendant had not admitted the facts before him, assuming that he testified that, since detective Ortiz himself had already expressed his uncertainty on that point. Perhaps the situation would have been different if the detective had insisted on his testimony that defendant admitted the facts before the district attorney, and the purpose of offering the testimony of this officer would have been to challenge the detective's testimony.

The second assignment of error challenges the refusal of the trial court to order that defendant's grandmother be summoned.

---

[1] We copy from the transcript of evidence:

"DISTRICT ATTORNEY: We inform that I do not have a copy of the statement given by defendant, according to the record in my possession.

MR. LLORENS: Do you not say that this defendant admitted that before district attorney Álvarez Quintana?

Yes, sir, he admitted it.

And was no statement taken of him?

JUDGE: Witness, was a written statement taken of you?

That is the question.

WITNESS: The man admitted the facts in the presence of lieutenant Mercedes Rivera.

And before the district attorney?

I'm not sure in this case if he admitted it.

MR. LLORENS: You are not sure now, but you said he did a while ago.

Because it was twice; first he was taken to police headquarters and then to the district attorney's office.

DISTRICT ATTORNEY COLÓN: Are you sure they took him before the district attorney?

Yes, sir."

If we consider the moment in which the request was made and the other circumstances appearing from the summary of the evidence, we have to agree with the Solicitor General that the error was not committed.

■ It is also alleged that the trial court "erred in attributing to a witness in his summary of the evidence statements which he never made."

Although the error was committed, it is not reversible. Says the Solicitor General in his memorandum:

"We admit that the judge erred in saying, when summing up the evidence, that witness Guillermo Santiago Bermúdez testified that when defendant was arrested 'he started to cry and asked the witness' brother Higinio to forgive him' (Tr. Ev. 99), but this error is not of such a nature as to warrant reversal of the judgment, particularly if we take into consideration that witness Higinio Bermúdez Meléndez, owner of the business, said in a statement which was not controverted and to which we have already made reference that defendant asked him to forgive him the night he was arrested (Tr. Ev. 8). We should note further that when the judge finished analyzing the evidence, he said the following:

'. . . That is, briefly, what the witnesses have testified. There may be something to add or delete, and if the district attorney or the defense has any doubt, we could correct it in any part of the statements' (Tr. Ev. 106).

and that both the defense and the district attorney signified their approval of the analysis of the evidence made by the judge (Tr. Ev. 106)." Memorandum of the Solicitor General, pp. 9 and 10.

We agree.

■ In the fourth and last assignment it is alleged that the trial court erred (1) "in failing to give specific instructions to the jury on the contradictions of witness Guillermo Rosario in his testimony"; (2) "on the trustworthiness of his testimony because of his character of accomplice"; and (3) "in summing up the evidence in a manner inconsistent with the evidence heard."

The error was not committed. Appellant points out only two details in which the summary of the evidence made by the judge to the jury is inconsistent with the evidence presented. We have already discussed the first in the previous error. The other refers to the instruction given in the sense that in the course of the testimony of sergeant Ortiz Correa the district attorney was asked, "not as part of the witness' testimony but as part of the result of the witness' testimony, if he had taken a sworn statement to the witness, to which the district attorney answered that no sworn statement had been taken to the witness," when actually what happened was that the district attorney was asked for defendant's statement and he said that he did not have a copy of that statement in his record. Aside from these two discrepancies, which are wholly immaterial, the summary of the evidence made by the judge to the jury fully agrees with the evidence heard at the trial.

It is also well to note that at the close of his summary the judge said that "there may be something to add or delete, and if the district attorney or the defense has any doubt, we could correct it in any part of the statements." Both parties were satisfied with the summary made.

■ Lastly, regarding the contradictions in the testimony of one of the prosecution witnesses, the court instructed the jury at length on the doctrine that where part of a witness' testimony is false, the remainder should be taken with distrust. Nor did the judge err in failing to instruct the jury that the testimony of witness Rosario, who was an accomplice, should be weighed with much caution. Our laws merely require corroboration of the testimony, and on this the judge gave specific instructions to the jury. What we said in *People v. Montalvo*, 83 P.R.R. 700 (1961), was that Professor Wigmore explains that the rule on the necessity of corroborating an accomplice's testimony is due to the caution and distrust with which his testimony should be taken, based on a sup-

posed promise or expectation of immunity or better treatment for his participation in the commission of the offense; but that when this element of promise or expectation of immunity or clemency is lacking, the reason for the application of the rule (of corroboration) fails, and that the modern tendency is to eliminate the requirement of necessity of accomplices' corroboration, since the danger pointed out may be eliminated by adequate instructions to the effect that an accomplice's testimony should be weighed with utmost caution. It is obvious that we did not establish in that case the necessity of an instruction to that effect, since the rule of corroboration of an accomplice's testimony has not been eliminated in this jurisdiction.

No error having been committed to warrant reversal of the judgment appealed, the same will be affirmed.